IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN M. CRUM,  No. 6:16-cv-00600-HZ

        Plaintiff,

   v.

TANYIA BEAL, Counselor, Oregon State    OPINION & ORDER
Correctional Institution (OSCI);
ROB PERSSON, former Superintendent,
OSCI; GUY HALL, former Superintendent,
OSCI; CHRISTINE POPOFF, Superintendent,
OSCI,

        Defendants.

Steven M. Crum
3405 Deer Park Drive SE
Salem OR 97310

   Plaintiff Pro Se

ELLEN F. ROSENBLUM
Attorney General
SHANNON M. VINCENT #054700
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301

   Attorney for Defendants

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff, Steven M. Crum, is an inmate of the Oregon Department of Corrections, ("ODOC"), and is currently housed at the Oregon State Correctional Institution. ("OSCI"). Crum Dec. ¶¶ 18–19, ECF 19. Defendants are employed by OSCI. Verified Compl. ¶¶ 5–8, ECF 2.

Plaintiff brings this 42 U.S.C. § 1983 action alleging that Defendants violated his rights under both the United States Constitution and the Oregon Constitution. Plaintiff moves for partial summary judgment on his First, Second, and Fourth claims of relief. Defendants move for summary judgment under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), for failure to exhaust administrative remedies, and alternatively on the merits of Plaintiff's claims. Because I agree with Defendants that Plaintiff failed to exhaust his administrative remedies, I grant Defendants' motion and deny Plaintiff's motion.

## BACKGROUND

Plaintiff was formerly married to Rosanne Nicole Jewett ("Rosanne"). Plaintiff and Rosanne had two children named Gracie Robin Jewett ("Gracie") and Cameron Henry Sanders Jewett ("Cameron").[1] Rosanne Nicole Jewett Dec. ¶¶ 2–3, ECF 24. After Plaintiff's arrest, Rosanne filed to dissolve their marriage. Crum Dec. ¶ 12. Plaintiff alleges that as part of their divorce settlement Rosanne agreed that Plaintiff should have parenting time with their children, including sending and receiving letters to and from Gracie and Cameron. *Id*. at ¶ 14.

In early April 2014, Rosanne contacted Defendant Tanyia Beal ("Beal") "by telephone and asked that Mr. Crum no longer send mail to her or her two children." Beal Dec. ¶ 4, ECF 23. Rosanne said the reason she and her family wanted to cease communications with Plaintiff was because:

---

[1] Plaintiff refers to his children by their birth surname Crum; however, the children have been adopted by their step-father and use the surname Jewett. *See* Crum Dec. Ex. 9.

2 – OPINION & ORDER

> Our family needed time to grieve, heal, and move on from the trauma that Steven Montie Crum's crime and life imprisonment caused. Continued contact from Steven Montie Crum was interfering with our healing process and re-opened old wounds. My family was having trouble moving on from the trauma while Steven Montie Crum remained in contact with us. We determined, as a family, that cutting contact with Steven Montie Crum was necessary for our emotional health and wellbeing.

Rosanne Nicole Jewett Dec. ¶ 7. Both Cameron and Gracie were a part of and agreed with this decision. Cameron Henry Jewett Dec. ¶ 6, ECF 25; Gracie Robin Jewett Dec. ¶ 6, ECF 26.

On April 3, 2014, in response to Rosanne's request, Defendants Beal and Rob Persson issued an "Outgoing Mail Restriction Notice" to Plaintiff prohibiting him from sending mail to Rosanne, Gracie, and Cameron. Crum Dec. Ex. 1. Plaintiff later requested from Beal the written request for an Outgoing Mail Restriction Notice, but Beal replied stating that Rosanne did not submit the request in writing. Crum Dec. Ex. 3. Plaintiff has filed no grievances or complaints on any issue as an ODOC inmate. Casper Dec. ¶ 11, ECF 22.

## LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28

3 – OPINION & ORDER

(9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiff argues that Defendants, by restricting Plaintiff's ability to send letters to his children, violated his rights under the First and Fourteenth Amendments of the United States Constitution. Plaintiff also argues that Defendants' actions caused unnecessary rigor, violating Article I, section 13 of the Oregon Constitution. Verified Compl. ¶¶ 97–98. Defendants argue that under the PLRA, Plaintiff did not exhaust his "available" administrative remedies. As a result, Defendants argue the case should be dismissed in its entirety with no need to reach the merits. I agree.

### I. PLRA Exhaustion Standards

Exhaustion under the PLRA is mandatory. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). However, exhaustion is mandatory only as long as "administrative remedies . . . are available." *Ross v. Blake,* 136 S. Ct. 1850, 1862 (2016). "To be available, a remedy must be available as a practical matter; it must be capable of use; at hand." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc) (internal quotation marks omitted).

Exhaustion is an affirmative defense "that must be pled and proved by a defendant." *Id.* at 1168. The defendant has the burden to prove that "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. Once a defendant has made such a showing, the burden shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. Defendant is entitled to summary judgment if there is undisputed evidence, when viewing the evidence in the light most favorable to the prisoner. *Id.* at 1166.

In the *Albino* panel opinion, the court gave clear guidance regarding the analysis and burdens of proof to be used in evaluating an exhaustion argument.[2] The defense initially has a "very low" burden of demonstrating that an inmate failed to exhaust a claim before commencing a lawsuit. 697 F.3d 1023, 1031 (9th Cir. 2012). This can be satisfied by evidence showing that "a grievance procedure existed" at the agency, and "it was not followed" by the inmate. *Id.* at 1032.

After the defense establishes the absence of exhaustion, the burden shifts to the plaintiff to "demonstrate that the grievance procedure was unavailable." *Id.* For a remedial procedure to be "available" it must exist both in law and, in actual practice be "capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (internal quotation marks omitted).

---

[2] Although the *en banc* court rejected the panel's decision on the merits, it affirmed the burdens of proof laid out by the panel. *See Albino* 747 F.3d at 1172.

5 – OPINION & ORDER

In *Ross,* the Supreme Court enumerated three instances where a procedure, in a practical sense, is unavailable: (1) when the process operates as a "simple dead end" with no actual possibility of relief to prisoners; (2) when the process is so opaque or confusing that it is "essentially unknowable—so that no ordinary prisoner can make sense of what it demands"; and (3) when prison officials thwart inmates from using the process through machination, misrepresentation, or intimidation. *Id.* at 1859–60 (internal quotation marks omitted).

## II.    Regulatory Procedure

The "Outgoing Mail Restriction Notice" was issued to Plaintiff pursuant to Oregon Administrative Rule ("O.A.R.") 291-131-0021. Crum Dec. Ex. 2. Under this rule, "[t]he department may prohibit an inmate from sending unwanted mail to a particular person or address when requested by the person or, in the case of a minor child, by the child's parent or legal guardian." O.A.R. 291-131-0021(1). Both parties agree that by its own terms, there is no potential administrative review under this rule. O.A.R. 291-131-002(3) ("The decision will be final and will not be subject to administrative review.").

However, according to Defendants, when a review is not allowed under a specific regulation, an inmate may file a grievance under O.A.R. 291-109-0140, which sets forth the "Inmate Communication and Grievance Review System." Casper Dec. ¶¶ 8, 12. This regulation gives inmates the right to file a grievance concerning "[t]he misapplication of any administrative directive or operational procedure[s.]" O.A.R. 291-109-0140(2)(a). Plaintiff does not contest that a grievance over the outgoing mail restriction could potentially be filed under this provision.

While O.A.R. 291-109-0140(2) gives inmates the right to file such a grievance, O.A.R. 291-109-0140(3) restricts that broad ability by prohibiting grievances for "[i]ncidents or actions for which there exists a separate internal department appeal or review process as identified by an

6 – OPINION & ORDER

O.A.R. for which an inmate may take part in[.]" O.A.R. 291-109-0140(3)(b). Defendants maintain that because the outgoing mail restriction rule expressly lacks an internal appeal or review process, the limitation in O.A.R. 291-109-0140(3) does not apply. Accordingly, Defendants argue the grievance process was available under O.A.R. 291-109-0140(2), was not limited by O.A.R. 201-109-0140(3), Plaintiff failed to grieve the restriction, and his failure to do so results in dismissal under the PLRA.

In response, Plaintiff points to the full text of O.A.R. 291-109-0140(3)(b), which provides in relevant part: "[i]ncidents or actions for which there exists a separate internal departmental appeal or review process as identified by an OAR for which an inmate may take part in; *for example, rejection or confiscation of mail*[.]" O.A.R. 291-109-0140(3)(b) (emphasis added). Plaintiff argues that because the limitation specifically cites to the rejection or confiscation of mail, the grievance rules, when considered with the outgoing mail restriction rule, are so confusing and "opaque," as to make the filing of a grievance unavailable.

### III. Analysis

As noted above, *Ross* recognized that a grievance process can be practically unavailable because it is "essentially unknowable" and prevents a prisoner from making sense of it. *Ross,* 136 S. Ct. at 1859. However, *Ross* recognized that an inmate's reasonable mistake about, misunderstanding of, or disagreement with a prison's grievance procedure does not meet this standard. *Id.* at 1858.

Cases decided after *Ross* have differentiated between situations where the regulations were silent and failed to address a particular situation from those where the plaintiff simply had an unsubstantiated belief that a grievance regulation had a particular meaning. *Compare Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (stating a regulation is "so

opaque" and "so confusing that . . . no reasonable prisoner can use [it]" when "[t]he regulation[] simply do[es] not contemplate the situation"), *with Hokenstrom v. N.H. Dep't of Corr.*, No. 14-CV-557-SM, 2016 WL 6989763, at *5 (D.N.H. Nov. 8, 2016) (stating that Plaintiff's argument was wrongly "based upon an unsubstantiated belief that complaints about medical issues are subject to a different grievance procedure than complaints about other conditions of confinement").

Plaintiff argues that the distinction between a "rejection," as contained in the grievance procedure regulation and a "restriction," as applied to his Outgoing Mail Restriction, was so confusing that the grievance remedy was "opaque." I disagree for two reasons.

First, the grievance procedure regulation says an inmate cannot grieve "[i]ncidents or actions for which there exists a separate or internal department appeal or review process." O.A.R. 291-131-0010(3)(b). Because the Outgoing Mail Restriction expressly states that "the decision will be final and will not be subject to administrative review," actions taken regarding outgoing mail are not exempt from the available grievance remedy process. *See* O.A.R. 291-131-0021(3). Read together, the only reasonable interpretation of the regulations is that an inmate must grieve an outgoing mail restriction through ODOC's Inmate Communication and Grievance Review System.

Second, the term "rejection" is not the same as "restriction," and it is not treated as such by ODOC's regulations. Both of these types of mail are discussed in O.A.R. 291-131-0037(6) which refers to the "rejection or confiscation of mail." That regulation generally addresses the disposition of prohibited mail when an inmate violates a mail rule. The inmate receives a violation notice in accordance with the violation committed. O.A.R. 291-131-0037(6)(a) (stating an inmate receives a "Mail Violation Notice (CD 618a)" for rejected mail); O.A.R. 291-131-

8 – OPINION & ORDER

0037(6)(c) (stating an inmate receives a "Mail Confiscation Notice (CD 618b)" for confiscated mail). Mail violation notices for rejected or confiscated mail are issued under O.A.R. 291-131-0037(6) and an Administrative Review procedure is provided for such notices under O.A.R. 291-131-0050(1).

When these regulations are read as a whole, the only reasonable interpretation is that the phrase "rejection or confiscation of mail" refers to the internal department appeals of mail violation or mail confiscation violation notices issued under O.A.R. 291-131-0037(6). Because Plaintiff received an outgoing mail restriction under O.A.R. 291-131-0021, (CD 618d), and not a mail violation or confiscation notice under O.A.R. 291-131-0037(a) (CD 618a) or O.A.R. 291-131-0037(c) (CD 618b), there is no confusion created by the regulations when they are considered together.

Plaintiff's misinterpretation of the regulation is insufficient to prove that a regulation is so "opaque" that, in a practical sense, it is unavailable. While "[p]risoners should not need a law degree and an understanding of every corner of [state] statutes and case law to understand what claims need to be exhausted[,]" *Compton v. Cox*, No. 12-CV-837-JDP, 2017 WL 933152, at *7 (W.D. Wis. Mar. 8, 2017), these regulations are not so confusing as to make the grievance process unavailable to the ordinary prisoner.

There is no dispute here that Plaintiff was aware of the grievance procedure and that he failed to file one. The PLRA requires that his § 1983 claims be dismissed.

**IV.     State Claim**

Plaintiff's federal claims are the sole basis for this Court's subject matter jurisdiction. The dismissal of those claims leaves only Plaintiff's claim based on the Oregon Constitution. Because I have dismissed all claims over which this Court has original jurisdiction, I exercise my

9 – OPINION & ORDER

discretion under 28 U.S.C. § 1367(c)(3) and decline to exercise supplemental jurisdiction over the Oregon Constitution claim. Therefore, that claim is also dismissed.

## CONCLUSION

Defendants' Motion for Summary Judgment [21] is granted. Plaintiff's Motion for Partial Summary Judgment [19] is denied.

IT IS SO ORDERED.

Dated this \_\_\_8\_\_\_ day of \_\_\_May\_\_\_, 2017.

_____
MARCO A. HERNÁNDEZ
United States District Judge